## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **JOHN LOGAN SHARP**<br>**216 Kennedy Drive**<br>**Severna Park, MD 21146**<br>**Ann Arundel County,**<br><br>**on behalf of himself and all others similarly situated,**<br><br>             **Plaintiffs,**<br>    **v.**<br><br>**Terminix International, Inc.**<br>**860 Ridge Lake Blvd.**<br>**Memphis, TN 38120,**<br><br>**and**<br><br>**The Terminix International Company**<br>**Limited Partnership**<br>**855 Ridge Lake Blvd.**<br>**Memphis, TN 38120**<br><br>**and**<br><br>**ServiceMaster Global Holdings, Inc.**<br>**860 Ridge Lake Blvd.**<br>**Memphis, TN 38120**<br><br>**and**<br><br>**DOES 1-55,**<br><br>           **Defendants.** | **Civil Action No.:**_____<br><br><br>**COMPLAINT**<br>**AND JURY DEMAND** |

### INTRODUCTION

John Logan Sharp ("Plaintiff"), brings this Class Action on behalf of himself and all

persons similarly situated, and makes the following allegations against Defendants Terminix

International, Inc., The Terminix International Company Limited Partnership, ServiceMaster

Global Holdings, Inc.,  and Does 1 through 55 ("Defendants"), concerning their acts and status

upon actual knowledge and concerning all other matters upon information, belief, and the

investigation of their counsel:

## NATURE OF ACTION

1.      Every year, thousands of Americans engage Terminix branded companies to

provide pest extermination and prevention services at their homes and businesses. Terminix is a

division and brand of  ServiceMaster Global Holdings, Inc.

2.      Defendants rely upon their outside salespersons to market and sell Terminix

products and services, and promise to pay their outside salespersons commission on products and

services sold.

3.      Defendants have engaged in a pattern and practice of failing to pay Plaintiff and

other outside salespersons agreed-upon commissions in a timely manner.

4.      Plaintiff brings the present class action to seek redress for Defendants' breach of

contract, unjust enrichment, and violations of the Maryland Wage Payment and Collection Law,

Md. Code Ann., Wage Payment and Collection, § 3-501 *et seq.* (LexisNexis 2017) ("MWPCL"),

providing for the timely payment of all wages and prohibiting and/or limiting the claw back of,

and failure to pay, commissions earned.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction in this case pursuant to the Class Action

Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the amount in controversy exceeds

$5,000,000 exclusive of costs and interest, at least one Class Member is a citizen of a different

state from at least one defendant, and there are more than 100 Class Members.

6.      This Court has personal jurisdiction over all Defendants as all Defendants reside in this judicial district and all Defendants' contacts with this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional norms of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because Defendants reside in this judicial district, and a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

8.      Plaintiff John Logan Sharp is an adult individual residing at 216 Kennedy Drive Severna Park, Maryland 21146, who was jointly employed by Terminix International, Inc., The Terminix International Company Limited Partnership, and ServiceMaster Global Holdings, Inc. as an outside salesperson from January 2016 to June 2017.

9.      Defendant Terminix International, Inc. is a corporation formed in the State of Delaware with its principal place of business at 860 Ridge Lake Blvd. Memphis, Tennessee 38120.  Terminix International, Inc. operates across the United States and worldwide,  and provides clients with commercial and residential pest extermination and prevention services.

10.      Defendant The Terminix International Company Limited Partnership is a limited partnership formed in the State of Delaware with its principal place of business at 855 Ridge Lake Blvd, Memphis, TN 38120.  The Terminix International Company Limited Partnership operates across the United States and worldwide,  and provides clients with commercial and residential pest extermination and prevention services.

11.      Defendant ServiceMaster Global Holdings, Inc. is a corporation formed in the State of Delaware with its principal place of business at 860 Ridge Lake Blvd. Memphis,

Tennessee 38120.  Defendant ServiceMaster Global Holdings, Inc. is the parent company of numerous "brands" including Terminix, and jointly employs Plaintiff and similarly situated individuals nationwide.

12.     Defendants DOES 1 through 55 are presently unknown persons and/or entities who have control over the wages, hours, and payroll of Plaintiff and similarly situated individuals nationwide.

13.     At all times relevant herein, Defendants acted by and through their agents and employees, each of whom acted in the course and scope of their employment with Defendants.

## FACTUAL ALLEGATIONS

14.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

15.     Plaintiff and the other outside salespersons who work for Defendants are tasked with the job of selling Terminix products and services to homes and businesses throughout the United States.

16.     Terminix clients contract with Defendants for extermination and pest prevention services.  Should clients wish, they can finance the purchase of products and services through a third-party financing company, ServiceMaster Acceptance Corporation.

17.     When the client chooses to finance the purchase through ServiceMaster Acceptance Corporation, the client makes a down payment directly to Plaintiff or other outside salespersons at the time of the sale.  Upon information and belief, ServiceMaster Acceptance Corporation then renders full payment for the products and services to Defendants.  The client is then expected to make regular payments to ServiceMaster Acceptance Corporation according to

the terms of his or her financing agreement with ServiceMaster Acceptance Corporation until the loan is repaid.

18.     When the client chooses not to finance the purchase with ServiceMaster Acceptance Corporation, the client pays the full sale price to Plaintiff or other outside sales persons at the time of the sale.

19.     During their employment Defendants' outside salespersons, including Plaintiff, are compensated with both a regular salary and commission on Terminix products and services sold.  Commission rates are determined based on a scale put in place by Defendants which calls for commissions to increase commensurate with sales of Terminix products and services.

20.     During the covered period, Defendants used at least two different written commission scales.  The first, used prior to May 2016, called for commissions to be paid at 0% for up to $20,000 in sales, at 15% for $20,001-$30,000 in sales, at 17% for $30,001-$40,000 in sales, at 19% for $40,001-$50,000 in sales, and at 21% for anything over $50,000 in sales.  The second, implemented in May 2016, requires commissions to be paid at 0% for up to $20,000 in sales, at 16% for $20,001-$30,000 in sales, at 18% for $30,001-$40,000 in sales, at 22% for $40,001-$50,000 in sales, and at 24% for anything over $50,000 in sales. During the entire covered period, outside salespersons were promised 3% commission on core termite services and core pest control services sold even before they hit the $20,000 sales threshold.

21.     Plaintiff and the other outside salespersons are/were not employed by ServiceMaster Acceptance Corporation and do not receive commission from ServiceMaster Acceptance Corporation or from Defendants for loans taken by Terminix clients.

22.    While the outside salespersons do not carry out the services, the sale is complete, added to the commission sales report, and commission is considered earned once the service technician begins the purchased service.

23.    Outside salespersons are promised payment of earned commissions on the 15th of the month after the service is started.

24.    For example, when an outside salesperson sells a single-visit service to a client, the outside salesperson is responsible for making the sale, collecting either full payment or the down payment if the client is financing the purchase through ServiceMaster Acceptance Corporation, and scheduling the service.  The service technician is responsible for providing the service.  When the service technician arrives at the client's residence and begins the service, the outside salesperson has already completed all duties required to earn the commission, and record of the sale is moved by Defendants' computer systems onto the outside salesperson's commission report.  The outside salesperson is promised payment of commission on that sale on the 15th of the following month.

25.    By way of another example, where an outside salesperson sells a multiple-visit service, such as an "advance renewal plan" to a client, the outside salesperson is responsible for making the sale, collecting either full payment or the down payment if the client is financing the purchase through ServiceMaster Acceptance Corporation, and scheduling the first visit of the service.  The service technician is responsible for providing the service.  When the service technician arrives at the client's residence and begins the first visit of the service, the outside salesperson has already completed all duties required to earn the commission, and the record of the sale is moved by Defendants' computer systems onto the outside salesperson's commission

report.  The outside salesperson is promised payment of commission on that sale on the 15th of the following month.

26.     Upon information and belief, no written agreement exists between Defendants and Plaintiff or other outside salespersons allowing for Defendants to take back, or "claw back," credit for sales once the payment has been rendered by either the client or ServiceMaster Acceptance Corporation and service has begun.

27.     Upon information and belief, no written agreement exists between Defendants and Plaintiff or other outside salespersons allowing for any alteration or limitation of the commission scales described in Paragraph 21 above.

28.     Nevertheless, Defendants regularly "claw back" commissions from Plaintiff and other outside salespersons, subtracting the value of past completed sales from their current sales reports, thereby lowering the amount on which they are paid commissions that month. Defendants have for example, clawed back commissions on advance renewals, cancelled after the first or more services were completed.

29.     During all times relevant herein, Plaintiff and other outside salespersons were subjected to an unlawful compensation system put in place by Defendants.

30.     Defendants have not paid all commissions promised to Plaintiff and the other outside salespersons where they performed all work necessary to earn the commission.

31.     Defendants have withheld, delayed, and/or clawed back  commission payments on advance renewals to/from Plaintiff and other outside salespersons.

32.     Defendants have withheld, delayed, and/or clawed back  commission payments on paper contract services to/from Plaintiff and other outside salespersons.

33.     Defendants have impermissibly clawed back commissions from Plaintiff and other outside salespersons' wages based on credits provided to customers after the close of sale and performance of the purchased product/service.

34.     Defendants have impermissibly clawed back and deducted previously paid commissions from Plaintiff and the other outside salespersons' wages based on customer cancellations of Terminix products and services.

35.     Defendants have impermissibly clawed back and deducted previously paid commissions from Plaintiff and other outside salespersons' wages based on customer defaults on financing agreements with third party company, Service Master Acceptance Corporation.

36.     By clawing back, withholding, and/or delaying commission payments, Defendants manipulated the rates at which Plaintiff and other outside salespersons' commissions should have been paid, and/or improperly limited them from succeeding in sales and/or incentive contests, causing additional monetary losses to Plaintiff and other outside salespersons.

37.     Defendants' clawing back, withholding, and/or delaying of commission payments are not subject to a bona fide dispute.  On multiple occasions, Plaintiff and other outside salespersons discovered Defendants' failures to properly compensate them and raised this failure to the attention of their supervisors.  On those occasions, Defendants added previously clawed back, withheld, and/or delayed commissions to later pay checks.  On those occasions, Defendants did not adjust the commission rates for the pay periods during which those commissions were earned, and did not make payments reflecting or making up for the change in rates in the pay period in which those commissions were earned.

38.     Instead of properly compensating Plaintiff and other outside salespersons with all commissions owed, Defendants require Plaintiff and other outside salespersons to go through the

time consuming process of requesting, accessing, printing, and cross-referencing multiple records kept by Defendants in order to determine which commission payments Defendants have clawed back, withheld, and/or delayed, and to request payment of those commissions. The documents that must be cross-referenced include Activity Detail Reports, Pay Stubs, and Sales Contracts, all of which are maintained by Defendants within the regular course of business. These documents are not always available or made available to outside salespersons for their reference and review. Defendants have not paid Plaintiff and other outside salespersons all clawed back, withheld, and/or delayed commissions.

39.     Despite knowing promised commissions were being improperly clawed back, withheld, and/or delayed, Defendants continued to carry out their scheme of clawing back, withholding, and/or delaying commission payments to Plaintiff and other outside salespersons, thereby increasing their own profits.

40.     Defendants are liable to Plaintiff and the other outside salespersons for all losses, earned and unpaid commissions, and associated damages.

## CLASS ALLEGATIONS

41.     Plaintiff brings this action on behalf of himself, individually, and as a class action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class and Subclass, subject to expansion or narrowing as appropriate in a motion to certify:

**National Class:**

All persons in the United States, who are current or former outside salespersons of Defendants, from fifteen years prior to filing of the complaint to the present (hereinafter referred to as the "National Class").

**Maryland State Subclass:**

All persons in the State of Maryland who currently or formerly worked for Defendants as outside salespersons from three years prior to filing of the complaint to the present (hereinafter referred to as the "Maryland Subclass").

42.     Excluded from the Classes are: (a) any judge or magistrate presiding over this action and members of their families; (b) any Defendant and/or Third-Party Defendant and any entity in which any Defendant and/or Third-Party Defendant has a controlling interest or which has a controlling interest in any Defendant and/or Third-Party Defendant and its legal representatives, assigns and successors of any Defendant and/or Third-Party Defendant; and (c) all persons who properly execute and file a timely request for exclusion.

43.     ***Numerosity.***   Upon information and belief, there are thousands of individuals who Defendants employed as outside salespersons during the fifteen years prior to filing of the complaint to the present.  Upon information and belief, there are also thousands of individuals who Defendants employed as outside salespersons during the three years prior to the filing of the complaint to the present.  Defendants maintain many locations employing outside salespersons throughout the United States and in the state for which a Subclass has been brought.  Although the exact number of such persons is unknown at this time, Defendants' record systems contain information on the identities and location of all such parties. Because Defendants have exclusive control of such information, Plaintiff reserves his right to amend his allegations following completion of relevant discovery from Defendants. Given the nature and extent of Defendants' activities in states where they employ individuals sought to be represented in this lawsuit, in each of which outside salespersons were improperly compensated commission during the relevant

class period, the members of the Class, and the Subclass, are so numerous that joinder of all members is impracticable.

44.    ***Commonality.*** Plaintiff's claims involve questions of law and fact common to the Class and Subclass because Plaintiff and other members of the classes were parties to commission agreements that had the same relevant terms, and were subjected to the same scheme of withholding, failing to pay, and/or clawing back commissions imposed by Defendants.  Among these common relevant questions of law or fact are:

> a.    Whether Defendants controlled the operations of each branch sufficiently to be deemed joint employers;
>
> b.    Whether Defendants had a policy and/or  practice of impermissibly withholding, delaying, and/or failing to pay commissions on advance renewals;
>
> c.    Whether Defendants had a policy and/or practice of impermissibly withholding, delaying, and/or failing to pay commissions on paper contract services;
>
> d.    Whether Defendants had a policy and/or practice of impermissibly withholding, delaying, and/or failing to pay commissions on sales made;
>
> e.    Whether Defendants had a policy and/or practice of  impermissibly clawing back commissions based on customer credits; and
>
> f.    Whether Defendants had a policy and/or practice of impermissibly clawing back commissions based on customer cancellations.

g.   Whether Defendants had a policy and/or practice of impermissibly clawing back commissions based on customer defaults on ServiceMaster Acceptance Corporation financing agreements.

45.   ***Adequacy.***   Plaintiff will fairly and adequately protect the interests of the Class and Subclass.  Plaintiff has retained competent counsel, experienced in class litigation, and have no conflict of interest with other Class or Subclass members in the maintenance of this class action.  In addition, Plaintiff has no relevant relationship with Defendants except as a former employee.  Plaintiff's interests are antagonistic to the interests of Defendants and Plaintiff will vigorously pursue the claims of the Class and Subclass.

46.   ***Declaratory or Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2).*** Alternatively or additionally, Defendants  have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

47.   ***Predominance and Superiority: Federal Rule of Civil Procedure 23(b)(3).*** Alternatively or additionally, there are common questions of law or fact common to Class and Subclass members that predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy because:

a.   the damages suffered by each individual class member may be relatively small, the expense and burden of individual litigation makes it impracticable for members of the Classes to individually seek damages;

b.   named Plaintiff is unaware of any litigation currently undertaken by any current or former employees to adjudicate this dispute;

12

c.     Class members, to the extent that they are aware of their rights against Defendants herein, would be unable to secure counsel to litigate their claims on an individual basis because of the relatively small nature of the individual damages, the lack of financial resources of many members of the Class, and the fear of retaliation for filing suit, so that a class action is the only feasible means of recovery for the Class members; and,

d.     Plaintiff envisions no difficulty in the management of this action as a class action, nor will there be any difficulty in the management of the various subclasses. Damages may be calculated with mathematical precision from the information maintained in Defendants' records, so that the cost of administering any recovery can be minimized.  Defendants' records will also reveal the name and location of all employees employed with Defendants, which will make notifying all Class and Subclass members simple and straight forward.

## CAUSES OF ACTION

### COUNT I

### *Breach of Contract*

48.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

49.     This count for common law breach of contract is brought by Plaintiff on behalf of the National Class against Defendants Terminix International, Inc., The Terminix International Company Limited Partnership, ServiceMaster Global Holdings, Inc., and Does 1-55 ("Defendants").

13

50.    Plaintiff and other members of the National Class entered into substantially identical employment and compensation agreements with Defendants, wherein they agreed to be paid commission based on certain scales.

51.    Defendants did not pay all commissions promised to Plaintiff and  other members of the National Class once they had performed all work necessary to earn the compensation.

52.    Plaintiff and other members of the National Class gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed under their contracts with Defendants.

53.    As a direct result of Defendants' breach of the contract, Plaintiff and other members of the National Class suffered damages in the form of lost commission payments.

54.    Plaintiff and other members of the National Class are entitled to legal and equitable relief against Defendants including but not limited to, damages, incidental and consequential damages, attorneys' fees, costs of suit, and other relief as deemed appropriate.

## COUNT II

### *Unjust Enrichment*

55.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

56.    This count for common law unjust enrichment is brought by Plaintiff on behalf of the National Class against Defendants Terminix International, Inc., The Terminix International Company Limited Partnership, ServiceMaster Global Holdings, Inc., and Does 1-55 ("Defendants").

57.    Plaintiff and other members of the National Class have conferred benefits upon Defendants by selling Terminix products and services.

14

58.     The benefits conferred were neither officious nor gratuitous.

59.     Defendants have generated and received millions of dollars of revenue as a result of sales made by Plaintiff and other members of the National Class.

60.     It would be inequitable for Defendants to retain the share of Plaintiff and other members of the National Class' earned commission.

61.     Defendants have impermissibly retained commission payments promised to their outside salespersons nationwide.

62.     Defendants have knowledge of this benefit.

63.     Defendants have voluntarily accepted and retained this benefit.

64.     The circumstances, as described herein, are such that it would be inequitable for Defendants to retain the ill-gotten benefit without paying the value thereof to Plaintiff and other members of the National Class.

65.     Plaintiff and other members of the National Class are entitled to the amount of Defendants' ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT III

### Violation of MWPCL § 3-502

#### *Failure to Regularly Pay All Wages*

66.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

67.     This count for violation of MWPCL § 3-502  is brought by Plaintiff on behalf of the Maryland Subclass against Defendants Terminix International, Inc., The Terminix

International Company Limited Partnership, ServiceMaster Global Holdings, Inc., and Does 1-55 ("Defendants").

68.     Defendants are "employer(s)" as that term is defined by Md. Lab. and Emp. Code § 3-501(b).

69.     The commissions paid to Plaintiff and the other members of the Maryland Subclass constitute "wages" as that term is defined in Md. Lab. and Emp. Code § 3-501(c).

70.     Defendants have employed Plaintiff and the other members of the Maryland Subclass within the State of Maryland.

71.     Defendants agreed to compensate Plaintiff and the other members of the Maryland Subclass commission on sales made based on particular scales set forth by Defendants.

72.     Defendants did not pay all commissions promised to Plaintiff and members of the Maryland Subclass once they had performed all work necessary to earn the compensation.

73.     Defendants did not pay all commissions earned to Plaintiff and members of the Maryland Subclass during regular pay periods.

74.     Defendants did not pay all commissions earned to Plaintiff and members of the Maryland Subclass at least once every two weeks or twice in each month.

75.     Defendants have failed to pay Plaintiff and members of the Maryland Subclass commission on all advance renewals.

76.     Defendants have failed to pay Plaintiff and members of the Maryland Subclass commission on all paper contract services.

77.     Defendants have impermissibly clawed back and deducted previously paid commissions from wages of Plaintiff and the other members of the Maryland Subclass based on credits provided by Defendants to customers.

16

78.     Defendants have impermissibly clawed back and deducted previously paid commissions from wages of Plaintiff and the other members of the Maryland Subclass based on customer cancellations of Terminix products and services.

79.     Defendants have impermissibly clawed back and deducted previously paid commissions from wages of  members of the Maryland Subclass based on customer defaults on financing agreements with third party company, Service Master Acceptance Corporation.

80.     Upon information and belief, Plaintiff and other members of the Maryland Subclass have not expressly authorized Defendants, in writing or otherwise, to claw back or deduct previously earned or paid commissions.

81.     Defendants failed to timely pay Plaintiff and Maryland Subclass members all commissions earned.

82.     Defendants failed to pay Plaintiff and Maryland Subclass members all commissions earned within two weeks from the date on which they were required to pay the commissions.

83.     This failure is not the result of a bona fide dispute, but rather, the result of improper pay practices put in place by Defendants to help increase profit margins.

84.     Defendants are liable to Plaintiff and members of the Maryland Subclass in the amount of such unpaid and clawed back commissions, plus interest at the legal rate from the date each such commission payment first became due.

85.     In addition to unpaid and clawed back commissions, Defendants are also liable to Plaintiff and members of the Maryland Subclass in the amount of up to three-times the total commissions earned and unpaid, as well as reasonable attorneys' fees and other costs.

17

## COUNT IV

### Violation of MWPCL §§ 3-505

### *Failure to Pay Wages On Termination*

86.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

87.    This count for violation of MWPCL § 3-505  is brought by Plaintiff on behalf of the Maryland Subclass against Defendants Terminix International, Inc., The Terminix International Company Limited Partnership, ServiceMaster Global Holdings, Inc., and Does 1-55 ("Defendants").

88.    Defendants are "employer(s)" as that term is defined by Md. Lab. and Emp. Code § 3-501(b).

89.    The commissions paid to Plaintiff and the other former employee members of the Maryland Subclass constitute "wages" as that term is defined in Md. Lab. and Emp. Code § 3-501(c).

90.    Defendants failed to compensate Plaintiff and the other former employee members of the Maryland Subclass all agreed upon commissions upon termination of their employment.

91.    Defendants failed to pay Plaintiff and the other former employee members of the Maryland Subclass commission on all advance renewals upon termination of their employment.

92.    Defendants  failed to pay Plaintiff and the other former employee members of the Maryland Subclass commission on all paper contract services upon termination of their employment.

93.     Defendants impermissibly clawed back commissions on sales made by Plaintiff and the former employee members of the Maryland Subclass based on credits provided to customers.  Defendants failed to pay these commissions to Plaintiff and the former employee members of the Maryland Subclass upon termination.

94.     Defendants impermissibly clawed back commissions from Plaintiff and the former employee members of the Maryland Subclass based on customer defaults on financing agreements with third party company, ServiceMaster Acceptance Corporation.  Defendants failed to pay these commissions to Plaintiff and the former employee members of the Maryland Subclass upon termination.

95.     Defendants failed to pay all wages due for work that Plaintiff and former employee Maryland Subclass members performed and completed prior to termination. Defendants failed to pay all wages due Plaintiff and former employee members of the Maryland Subclass on or before the day on which those wages would have been paid if the employment had not been terminated.

96.     This failure is not the result of a bona fide dispute, but rather, the result of improper pay practices put in place by Defendants to help increase profit margins.

97.     Defendants are liable to Plaintiff and members of the Maryland Subclass in  the amount of such unpaid and clawed back commissions, plus interest at the legal rate from the date each such commission payment first became due.

98.     In addition to unpaid and clawed back commissions, Defendants are also liable to Plaintiff and members of the Maryland Subclass in the amount of up to three-times the total commissions earned and unpaid, as well as reasonable attorneys' fees and other costs.

## JURY DEMAND

99.    Plaintiff hereby demands a trial by jury in the above captioned matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and other Class and Sub-Class members, respectfully seeks the following relief:

a.    Certify the class and subclasses as requested herein;

b.    Appoint Plaintiff as Class Representative;

c.    Appoint counsel herein as Lead Counsel;

d.    Award all damages caused by Defendants, and punitive damages where appropriate;

e.    Award statutory and civil penalties as provided by law;

f.    Award prejudgment interest as is appropriate running from the date these wages were first due;

g.    Award attorneys fees and costs; and

h.    Grant any such further relief as this Court may deem appropriate.

Respectfully submitted,


Dated: January 31, 2018                    /s/ Caroline Ramsey Taylor, Esq.
                                           Caroline Ramsey Taylor
                                           WHITFIELD BRYSON & MASON LLP
                                           518 Monroe Street
                                           Nashville, TN 37208
                                           Telephone:    (615) 921-6500
                                           Fax:          (615) 921-6501
                                           Email:        caroline@wbmllp.com

                                           *Additional counsel listed on next page.*

20

Gary E. Mason (DC Bar No. 418073)*
Danielle L. Perry (DC Bar No. 1034960)*
WHITFIELD BRYSON & MASON LLP
5101 Wisconsin Ave NW, Ste. 305
Washington, D.C. 20016
Telephone:      (202) 429-2290
Fax:      (202) 429-2294
Email:      gmason@wbmllp.com
      dperry@wbmllp.com

*pro hac vice* admission anticipated