IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| JOHN LOGAN SHARP, on behalf of himself and all others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 2:18-cv-02072-SHM-dkv |
| v. | ) ) | |
| TERMINIX INTERNATIONAL, INC., et al., | ) ) ) | |
| Defendants. | ) | |

**ORDER**

Before the Court is Defendants Terminix International, Inc., The Terminix International Company Limited Partnership, and ServiceMaster Global Holdings, Inc.'s Motion to Compel Arbitration (the "Motion"), filed on February 23, 2018. (ECF No. 18; see also ECF No. 18-1.) Plaintiff John Sharp responded on March 9, 2018. (ECF No. 27.) Defendants replied on March 21, 2018. (ECF No. 28.)

For the following reasons, the Motion is GRANTED.

**I. Background**

The action arises from an alleged agreement between Plaintiff and Defendants in which Defendants "promise[d] to pay their outside salespersons commission on products and services sold."

(ECF No. 1 at 2.)[1]  Plaintiff alleges that "Defendants have engaged in a pattern and practice of failing to pay Plaintiff and other outside salespersons agreed-upon commissions in a timely manner."  (Id.)  Plaintiff alleges breach of contract, unjust enrichment, and violation of §§ 3-502 and 3-505 of the Maryland Wage Payment and Collection Law.  (Id. at 13-19.)  He seeks compensatory damages, punitive damages, prejudgment interest, and attorney's fees.  (Id. at 20.)

The heart of the present dispute is whether the parties agreed to arbitrate their claims.  Defendants contend that they "maintain[] a policy of requiring, as a condition of employment, all employees and new hires . . . to agree to utilize [an] alternative dispute resolution program known as *The ServiceMaster We Listen Dispute Resolution Plan* ("The *We Listen* Plan")."  (ECF No. 18-1 at 53.)  Defendants assert that on May 11, 2016, Plaintiff signed an employment contract (the "Compensation Plan") that referred to The *We Listen* Plan.  (Id.)  Specifically, the Compensation Plan contained a clause above Plaintiff's signature stating: "By my signature below, I acknowledge that I have received a copy of this Compensation Plan, have reviewed *The ServiceMaster We Listen Dispute Resolution Plan*, and agree to use *We Listen* to resolve any and all work-related disputes relating

---

[1]   Unless otherwise noted, all in-cite page numbers refer to the PageID number.

2

to my wages." (ECF No. 18-2 at 76.) Defendants provide a copy of The *We Listen* Plan that is not signed by Plaintiff. (See id. at 77-81.) The *We Listen Plan* includes, among other things, "a mutual agreement to arbitrate individual covered Disputes." (ECF No. 18-2 at 77.)

Plaintiff presents a different version of events. He alleges that he was never provided a copy of The *We Listen* Plan. (ECF No. 27 at 102.) He represents that "Defendants have a regular practice of requiring [employees] to sign documents without allowing them either time to review before signing, or copies to take home for their own records." (Id.) "When [Plaintiff] asked his supervisors questions about the content of the documents he was asked to sign, he was regularly told not to worry about the content, that he was not being asked to agree to anything, and that his signature was simply verifying he had been shown the document." (Id. at 102-03.)

Plaintiff argues that he did not sign The *We Listen* Plan because he was not provided a copy of it. (Id. at 103.) He contends that, when he signed the Compensation Plan, Defendants "did not mention *We Listen*, did not explain the terms of *We Listen*, and did not provide me with a copy of *We Listen* to read or review." (ECF No. 27-1 at 119.)

On February 23, 2018, Defendants filed the Motion. (ECF No. 18; see also ECF No. 18-1.) The Motion contends that

3

"[Plaintiff's] claims are subject to a valid and enforceable arbitration agreement." (Id. at 67.) Defendants move the Court to "dismiss this case or, alternatively, stay the case pending arbitration." (Id.) On March 9, 2018, Plaintiff responded. (ECF No. 28.) Defendants replied on March 21, 2018. (ECF No. 28.) On May 21, 2018, Defendants filed a Supplemental Memorandum. (ECF No. 29.)

**II. Jurisdiction**

Plaintiff contends that the Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). (ECF No. 1 at 2.) "CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000'" after aggregating the claims of individual members of the proposed class. Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. § 1332(d)(2), (d)(5)(B)).

Under CAFA, a class action is any civil action filed under Rule 23 of the Federal Rules of Civil Procedure. See id. § 1332(d)(1)(B). Plaintiff brings claims on behalf of various class members and invokes Rule 23. (See ECF No. 1 at 9-13.) The Court has original jurisdiction over his class action if "the matter in controversy exceeds the sum or value of

4

$5,000,000 . . . and is a class action in which (A) any member of a class of plaintiffs is a citizen of a State different from a named defendant . . . ." 28 U.S.C. § 1332(d)(2)(A).

Plaintiff is a citizen of Maryland. (ECF No. 1 at 3.) Defendant Terminix International Inc. is a Delaware corporation with its principal place of business in Tennessee. (Id.) Because Plaintiff and Defendant Terminix International Inc. are citizens of different states, CAFA's minimal diversity requirement is satisfied. See 28 U.S.C. § 1332(d)(2)(A).

Plaintiff alleges that "the amount in controversy exceeds $5,000,000 exclusive of costs and interest." (ECF No. 1 at 2.) A plaintiff's assertion of the amount in controversy is not questioned unless it appears "to a legal certainty" that a claim is for less than the jurisdictional amount. Schultz v. General R.V. Ctr., 512 F.3d 754, 756 (6th Cir. 2008). It does not appear to a legal certainty that Plaintiff and the class members cannot recover the amount asserted. Plaintiff has satisfied the amount in controversy requirement under § 1332(d)(2).

CAFA's minimal diversity requirement and the amount-in-controversy requirement are satisfied. The Court has jurisdiction.

**III. Choice of Law**

The parties dispute whether Tennessee or Maryland law applies. Defendants contend that The *We Listen* Plan "contains a

5

Tennessee choice of law provision with respect to issues of its construction, interpretation, validity, and enforcement." (ECF No. 18-1 at 59.) Plaintiff argues that, "because there was never mutual assent to the contract which contains Defendants' choice of law provision, and Tennessee applies the law of the state in which the contract was formed, any challenge to the formation of the contract should be governed by Maryland law." (ECF No. 27 at 107.)

The threshold determination about the validity of a contract containing a forum selection clause is a question of state substantive law. See Kutite, LLC v. Excell Petrol., LLC, No. 2:13-cv-2106, 2013 WL 5550091, at *2 (W.D. Tenn. Oct. 8, 2013). Because this is a diversity case, the Court applies the choice of law principles of the forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).

Tennessee follows the rule of *lex loci contractus*, which provides that "a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent." See Williams v. Smith, 465 S.W.3d 150, 153 (Tenn. Ct. App. 2014) (citing Ohio Cas. Ins. Co. v. Travelers Indem. Co., 493 S.W.2d 465, 467 (Tenn. 1973)). As applied here, "[a]pplication of these principles [] is somewhat circular." Cobble v. 20/20 Communications, Inc., No. 2:17-cv-53, 2018 WL 1026272, at *7 (E.D. Tenn. Feb. 23, 2018). If, as Defendants

6

contend, the parties executed a choice of law agreement specifying Tennessee law, the Court will enforce that agreement. If Plaintiff did not agree to the choice of law provision, there is no contrary intent and Maryland law will apply.

The Sixth Circuit confronted this question in Masco Cabinetry Middlefield, LLC v. Cefla N. Am., Inc. 637 F. App'x 192 (6th Cir. 2015). There, plaintiff and defendant disputed the validity of a sales contract. Id. at 194. Defendant contended that the disputed contract included a choice of law clause providing that any action arising out of the contract would be governed by Michigan law. Id. Plaintiff contended that there was no contract between the parties and that Ohio law applied. Id. at 196. In deciding whether a contract had been formed, the Sixth Circuit applied Michigan law, as provided in the disputed contract's choice of law clause.[2] Id. at 197.

Using the methodology applied and approved in Masco, the Court relies on the choice of law provision in the parties' dis-

---

[2] The court's methodology was questioned by Judge White, in dissent, who suggested that the majority was "put[ing] the cart before the horse by first deciding that Michigan law governs under a contractual choice-of-law provision, then applying Michigan law to determine whether there is a contract." Masco Cabinetry Middlefield, LLC v. Cefla N. Am., Inc., 637 F. App'x 192, 202 n.3 (6th Cir. 2015) (White, J. dissenting).

Before Masco, district courts in this circuit deciding the same question generally avoided considering choice of law provisions when the parties disputed the formation of a contract. See, e.g., Heiges v. JP Morgan Chase Bank, N.A., 521 F. Supp. 2d 641, 646 (N.D. Ohio 2007); Detroit Tigers, Inc. v. Ignite Sports Media, LLC, 203 F. Supp. 2d 789, 794 (E.D. Mich. 2002).

Since Masco, at least one district court in this circuit has followed the Masco methodology and relied on the choice of law provision in a disputed contract to determine the law governing an issue of contract formation. See Cobble v. 20/20 Communications, Inc., No. 2:17-cv-53, 2018 WL 1026272, at *7 (E.D. Tenn. Feb. 23, 2018).

7

puted contract. Thus, the Court applies Tennessee law to determine whether Defendants have established a valid contract.

In Tennessee, "in order for a contract to be consummated, the parties must mutually assent to the material terms." Allstate Ins. Co. v. Tarrant, 363 S.W.3d 508, 528 (Tenn. 2012). "[M]utual assent is determined by an objective standard -- that is, by the apparent intention of the parties as manifested by their actions." Id. (quoting Black's Law Dictionary 124 (8th ed. 2004)).

"[A]n individual who signs a contract is presumed to have read the contract and is bound by its contents. To hold otherwise would make contracts not worth the paper on which they are written." 84 Lumber Co. v. Smith, 356 S.W.3d 380, 383 (Tenn. 2011).

Plaintiff signed the Compensation Plan. (See ECF No. 18-2 at 76.) The Compensation Plan provides that: "By my signature below, I acknowledge that I have received a copy of this Compensation Plan, have reviewed *The ServiceMaster We Listen Dispute Resolution Plan*, and agree to use *We Listen* to resolve any and all work-related disputes, including disputes related to my wages." (Id.) The *We Listen* Plan contains, among other things, a statement that "[t]his Plan shall be construed, interpreted and its validity and enforceability determined, strictly in accordance with the Federal Arbitration Act (9 U.S.C. §1, *et seq*.) and

. . . in accordance with the laws of the State of Tennessee." (Id. at 80.)

Although Plaintiff did not sign The *We Listen* Plan, "[o]ther writings . . . which are referred to in a written contract may be regarded as incorporated by reference as a part of the contract and therefore, may be properly considered in the construction of the contract." McCall v. Towne Square, Inc., 503 S.W.2d 180, 183 (Tenn. 1973). The Compensation Plan expressly and clearly states that The *We Listen* Plan is incorporated. The text "was not hidden or indecipherable so that it would be unfair to expect [Plaintiff] to be aware of the provision." Robert J. Denley Co., Inc. v. Neal Smith Const. Co., Inc., No. W2006-00629-COA-R3-CV, 2007 WL 1153121, at *4 (Tenn. Ct. App. 2007). Plaintiff does not allege that he was the victim of fraud when he signed the Compensation Plan.

Plaintiff and Defendants manifested their assent to the choice of law provision by signing the Compensation Plan. Tennessee law governs the validity of the arbitration agreement.[3]

**IV. Standard of Review**

The Federal Arbitration Act ("FAA") strongly favors arbitration. EEOC v. Waffle House, Inc., 534 U.S. 279, 289 (2002).

---

[3] The only motion before the Court is Defendants' Motion to Compel Arbitration. (ECF No. 18.) Because Plaintiff's claims are not being addressed on the merits, the Court need not determine what law applies to those causes of action.

9

An arbitration agreement must be (1) in writing and (2) involve a transaction in interstate commerce. 9 U.S.C. § 2. Such an arbitration agreement "shall be valid, irrevocable, and enforceable." Id.

"Any doubts about whether an [arbitration] agreement is enforceable, including defenses to arbitrability, should be resolved in favor of arbitration." Johnson v. Long John Silver's Rests., Inc., 320 F.Supp.2d 656, 663 (M.D. Tenn. 2004) (internal citation omitted); accord Waffle House, 534 U.S. at 289. "[A]bsent a showing of fraud, duress, mistake, or some other ground upon which a contract may be voided, a court must enforce a contractual agreement to arbitrate." Haskins v. Prudential Ins. Co. of Am., 230 F.3d 231, 239 (6th Cir. 2000).

On a motion to compel arbitration:

> The court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000) (internal citation omitted).

The showing necessary to compel arbitration absent trial is the same as the showing necessary for summary judgment in a civ-

il suit.  Id.  The moving party must "clearly and convincingly establish[ ] the nonexistence of any genuine issue of material fact, and the evidence . . . must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986).  In particular, the moving party must show the existence of "a binding agreement to arbitrate." In re First Thermal Systems, Inc., 182 B.R. 510, 513 (Bankr. E.D. Tenn. 1995).

If that showing is made, the burden shifts to the nonmoving party to prove "that the claims at issue are unsuitable for arbitration." Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91 (2000).  That requires evidence beyond mere allegations and denials. See Great Earth Cos., Inc. v. Simons, 288 F.3d 878, 889 (6th Cir. 2002) (internal citation omitted) ("In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate."). The nonmoving party must point to evidence in the record, such as admissions, affidavits, answers to interrogatories, declarations, or depositions. See Metlife Securities, Inc. v. Holt, No. 2:16-cv-32, 2016 WL 3964459, at *7 (E.D. Tenn. July 21, 2016).

**V. Analysis**

  **A. Agreement to Arbitrate**

The Court must first determine whether "a valid agreement to arbitrate exists between the parties . . . ." Masco Corp. v. Zurich Am. Ins. Co., 382 F.3d 624, 627 (6th Cir. 2004) (citation omitted). "State contract law . . . governs in determining whether the arbitration clause itself was validly obtained, provided the contract law applied is general and not specific to arbitration clauses." Fazio v. Lehman Bros., Inc., 340 F.3d 386, 393 (6th Cir. 2003) (citations omitted). "An arbitration agreement may be invalidated for the same reasons for which any contract may be invalidated, including forgery, unconscionability, and lack of consideration." Id. (citing Doctor's Assocs. v. Casarotto, 517 U.S. 681, 687 (1996)).

Plaintiff argues that The *We Listen* Plan is invalid because it lacks consideration and unenforceable because it is unconscionable. (See ECF No. 27 at 106-12.)

  **1. Lack of Consideration**

Plaintiff contends that The *We Listen* Plan is not a binding contract because Defendants did not provide consideration. (ECF No. 27 at 108-09.) Plaintiff cites the provision in the Compensation Plan that Defendants "retain[] the right to modify, amend or discontinue this Plan, subject to the requirements of applicable law." (ECF No. 18-2 at 75.) Defendants respond that "The

12

Compensation Plan does not control *We Listen* and contains no provision giving [Defendants] the right to alter or amend *We Listen*." (ECF No. 28 at 129.)

Plaintiff's argument is not well taken. Defendants' "right to modify, amend or discontinue this Plan" applies only to the Compensation Plan, not to The *We Listen* Plan. (See ECF No. 18-2 at 75.) The *We Listen* Plan is not mentioned in the paragraph in the Compensation Plan that Plaintiff cites.

The *We Listen* Plan contains a paragraph providing, in relevant part: "[Plaintiff] and [Defendants] agree that the mutual obligations by [Defendants] and [Plaintiff] to arbitrate Disputes, my continued employment, [Defendants'] processing and evaluation of my application for employment, and [Defendants'] agreement to pay the applicable fees for mediation and arbitration, provide adequate consideration for this Plan." (Id. at 81.) A mutual promise "in itself [constitutes] sufficient consideration." Rodgers v. Southern Newspapers, Inc., 379 S.W.2d 797, 800 (Tenn. 1964).

The arbitration agreement is not invalid for lack of consideration.

### 2. Unconscionability

Plaintiff argues that The *We Listen* Plan is unenforceable because it is unconscionable. (ECF No. 27 at 109-12.) He argues that unconscionability stems from "the inequity of bargain-

13

ing power between the parties and the utter lack of opportunity [Plaintiff] had to understand the terms of the arbitration agreement because, among other reasons, it was never provided to him." (Id. at 110.) Plaintiff submits a declaration, which states, in relevant part:

> 5. In approximately May 2016, . . . [Defendants] required that I sign the revised compensation plan (hereafter "Compensation Plan").
> . . .
> 8. During my employment I was regularly asked to sign on lines without being given time to review the contents of what I was signing.
> 9. When I asked my supervisors questions about the content of the documents I was asked to sign, I was regularly told not to worry about the content, that I was not being asked to agree to anything, and that my signature simply verified that I had been shown the document.
> 10. [Defendants] regularly failed to provide copies of the documents to me for either my review or for my records.
> 11. I was not provided with copies of the Compensation Plan for my review or for my records.
> . . .
> 13. Until about a couple weeks ago, I never knew *We Listen* existed.
> . . .
> 16. When I was instructed to sign the Compensation Plan, [Defendants] did not mention *We Listen*, did not explain the terms of *We Listen*, and did not provide me with a copy of *We Listen* to read or review.

(ECF No. 27-1 at 119-20.)

"Unconscionability may arise from a lack of a meaningful choice on the part of one party (procedural unconscionability) or from contract terms that are unreasonably harsh (substantive unconscionability)." Trinity Industries, Inc. v. McKinnon

Bridge Co., 77 S.W.3d 159, 170 (Tenn. Ct. App. 2001). Tennessee courts "lump the two together" and find unconscionability "when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other." Trinity Industries, 77 S.W.3d at 171. It is not enough for the moving party to establish procedural or substantive unconscionability alone. Both must be established. See Iysheh v. Cellular Sales of Tennessee, LLC, 2018 WL 2207122, at *5 (E.D. Tenn. May 14, 2018) ("Even if the Agreement was [procedurally unconscionable], it is enforceable unless plaintiff can also show it is substantively unconscionable."); accord Cooper v. MRM Inv. Co., 367 F.3d 493, 505 (6th Cir. 2004) (concluding same).

Plaintiff submits sufficient evidence to establish that The *We Listen* Plan is procedurally unconscionable. Plaintiff asserts that he was asked to sign the Compensation Plan "without being given time to review the contents of what I was signing." (ECF No. 27-1 at 120.) He asserts that, when he asked questions about the documents, "[he] was regularly told not to worry about the content, that [he] was not being asked to agree to anything, and that [his] signature simply verified that [he] had been shown the document." (Id.) When Defendants asked Plaintiff to sign the Compensation Plan, "[Defendants] did not mention [The

15

*We Listen* Plan], did not explain the terms of [The *We Listen* Plan], and did not provide [Plaintiff] with a copy of [The *We Listen* Plan] to read or review." (Id.)  Plaintiff's declarations are analogous to the facts in Webb v. First Tennessee Brokerage, Inc., in which the court found that an arbitration agreement was procedurally unconscionable because defendant did not carry its burden "to show that the parties actually bargained over the arbitration provision."  No. E2012-00934-COA-R3-CV, 2013 WL 3941782, at *17 (Tenn. Ct. App. June 18, 2013).

Plaintiff's unconscionability defense fails, however, because he does not establish that The *We Listen* Plan is substantively unconscionable.  Although Plaintiff relies on the inequality in bargaining power between himself and Defendants, "[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context."  Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991).  An arbitration agreement in an employment contract is not oppressive or beyond the reasonable expectations of an ordinary person.  See Cooper, 367 F.3d at 504.  Plaintiff was not denied a meaningful choice.  He could have refused to sign the contract.  See Winn v. Tenet Healthcare Corp., No. 2:10-cv-02140-JPM-cgc, 2011 WL 294407, at *7 (W.D. Tenn. Jan. 27, 2017); Haun v. King, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984) ("If the provisions are [] viewed as so one-sided

16

that the contracting party is denied any opportunity for a meaningful choice, the contract should be found unconscionable."). Plaintiff has failed to establish that The *We Listen* Plan is substantively conscionable.

The *We Listen* Plan memorializes the parties' agreement to arbitrate their disputes. It is not unenforceable on the ground of unsconscionability. It contains a valid arbitration agreement.

**B. Scope of Arbitration Agreement**

The scope of the arbitration agreement in The *We Listen* Plan is broad. The *We Listen* Plan defines "Disputes" covered by the Plan as "all Disputes arising out of or relating to my employment, termination of employment or application for employment that I or the Company could otherwise have resolved in a court . . . ." (ECF No. 18-2 at 77.) The *We Listen* Plan provides a non-exhaustive list of covered claims, including "any federal, state or local law or common law doctrine for breach of contract," "torts," and "claims under federal, state or local law regarding wages and other compensation." (Id.) Plaintiff's causes of action for breach of contract, unjust enrichment, and violation of §§ 3-502 and 3-505 of the Maryland Wage Payment and Collection Law are subject to arbitration under The *We Listen* Plan.

17

**C. Whether Congress Intended Claims to be Non-Arbitrable**

The *We Listen* Plan contains the following class waiver provision:

> I HEREBY WAIVE ANY RIGHT FOR ANY DISPUTE TO BE BROUGHT, HEARD, DECIDED OR ARBITRATED AS A CLASS, COLLECTIVE AND/OR REPRESENTATIVE ACTION . . . . I understand that I will not be retaliated against, disciplined or threatened with discipline as a result of exercising rights under Section 7 of the National Labor Relations Act by the filing or participation in a class, collective or representative action in any forum; however, [Defendants] may lawfully seek enforcement of this Plan and the Class and Representative Action Waiver under the Federal Arbitration Act and seek dismissal of such class, collective or representative actions or claims.

(Id. at 79 (emphasis in original).)

Plaintiff argues that "[e]nforcement of the class waiver here would violate [his] right to concerted activity provided under the National Labor Relations Act." (ECF No. 27 at 113.) Plaintiff also argues that finding the class waiver enforceable would "contravene [] controlling [Sixth Circuit] authority" and "create a split within the Western District." (Id.) Defendants argue that the class waiver should be enforced because "[Plaintiff] signed a clear, unequivocal waiver to bring any class claim." (ECF No. 18-1 at 64.) Defendants cite Epic Systems Corp. v. Lewis, 138 S. Ct. 1612 (2018), in which the Supreme Court held "that the National Labor Relations Act does not bar enforcement of individual arbitration provisions or collec-

18

tive/class action waivers in arbitration agreements and the Federal Arbitration Act mandates enforcement of such provisions as written."  (ECF No. 29 at 135.)

In National Labor Relations Board v. Alternative Entertainment, Inc., the Sixth Circuit "join[ed] the Seventh and Ninth Circuits in holding that an arbitration provision requiring employees covered by the NLRA individually to arbitrate all employment-related claims is not enforceable."  858 F.3d 393, 401 (6th Cir. 2017); see Morris v. Ernst & Young, L.L.P., 834 F.3d 975, 985-86 (9th Cir. 2016); Lewis v. Epic Sys. Corp., 823 F.3d 1147, 1160 (7th Cir. 2016); contra Murphy Oil USA, Inc. v. NLRB, 808 F.3d 1013, 1018 (5th Cir. 2015).

In Epic Systems Corp. v. Lewis, the Supreme Court abrogated Alternative Entertainment.  138 S. Ct. 1612 (2018).  The court held that "Congress has instructed federal courts to enforce arbitration agreements according to their terms -- including terms providing for individualized proceedings."  Id. at 1619.  The Supreme Court has stated Congress's intent that claims like those at issue in this case be arbitrable.  The class action waiver is enforceable.

### D. Whether to Stay Proceedings Pending Arbitration

All of Plaintiff's claims are subject to arbitration.  Because there are no nonarbitrable claims, the Court need not consider whether to stay them.  See Stout, 228 F.3d at 714.

**VI. Conclusion**

For the foregoing reasons, Defendants' Motion is GRANTED. The case is DISMISSED WITHOUT PREJUDICE to the parties' right to re-open it for entry of an arbitration award or for any other relief to which the parties may be entitled. The parties are directed to proceed to arbitration in accordance with the terms of their agreement.

So ordered this 20th day of July, 2018.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE